IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Elaine Robinson, | ) | C/A No. 3:14-391-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| State of South Carolina Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Elaine Robinson, filed this employment action alleging race and gender discrimination, retaliation, and a hostile work environment pursuant to 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; against her employer, the South Carolina Department of Corrections.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment.  (ECF No. 23.)  Robinson filed a response in opposition

---

[1] To the extent Robinson asserts claims of race and/or gender discrimination and retaliation under § 1981, such claims fail as a matter of law because that statute provides no private right of action against governmental entities and actors.  See Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (holding that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981'") (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)).  Moreover, in enacting the ADEA, Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity, see Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000), and the State of South Carolina has not waived its immunity from suit in federal court.  See S.C. Code Ann. § 15-78-20(e).  The court further notes that Robinson failed to include any claim of discrimination under the ADEA in her Charge of Discrimination filed with the EEOC (EEOC Charge, ECF No. 36-2 at 1-3), and the allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint.  See King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976).  Thus, Robinson's ADEA claim also fails as a matter of law.



(ECF No. 36), and the defendant replied (ECF No. 38). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion for summary judgment should be granted.

## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to Robinson, to the extent they find support in the record. Robinson is an African-American female who began working for the defendant, the South Carolina Department of Corrections ("SCDC"), in 1986. Robinson became the Warden of Stevenson Correctional Institution ("SCI"), a Level 1-B prison for male inmates, in July of 2004. In 2012, SCI consisted of seven wards and a Special Management Unit ("SMU"). On August 30, 2012, Robinson was informed by Regional Director Dennis Patterson that SCI would be closing; however, there would be no reduction in force. All SCI employees were notified on September 17, 2012 of the facility's impending partial closure by Deputy Director of Operations, Robert E. Ward.[2] Robinson was moved to a position created for her at the Training Academy in October of 2012, where she remained until her appointment as Warden of Goodman Correctional Institution in September of 2013. Robinson's transfer to the Training Academy resulted in her loss of access to certain benefits enjoyed as a Warden, to include the loss of a state-provided car, cellular phone, gas card, and paging device. Robinson also lost management access and the supervisory responsibilities of a Warden. After her transfer, Robinson applied for other positions with SCDC, but was not selected. Robinson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 1, 2013 alleging discrimination

---

[2] Ultimately, as more fully discussed below, certain portions of SCI's facilities were merged with those of Walden Correctional Institution (hereinafter "Stevenson-Walden facility").



based on her race and sex, retaliation, and creation of a hostile work environment.  Robinson

received a right-to-sue letter from the EEOC on September 27, 2013 and this action followed.

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing

to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*."  Ballinger

v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal

quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence

would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could

rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639,

645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but

the court should examine uncontradicted and unimpeached evidence offered by the moving party.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine

whether a party's offered evidence is legally sufficient to support a finding of discrimination and

look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.  Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII).  The defendant's burden "is a burden of production, not persuasion."  Reeves, 530 U.S. at 142.  Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*."  Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination."  Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' "  Merritt,



601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence.  Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148.  However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate.  Id.  Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49.  "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    Robinson's Title VII Claims**

**1.    Hostile Work Environment**

**a.    Exhaustion and Timeliness**

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.  42 U.S.C. § 2000e-5(f)(1); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).  Exhaustion of administrative remedies is a statutory



prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (stating that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim"). In the employment discrimination context, courts have interpreted statutory requirements to exhaust administrative remedies to mean that each discrete incident of discriminatory treatment must be administratively exhausted. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)); Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007). Moreover, in South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e-5(c), (e); Jones, 551 F.3d at 300. "[The timely filing of a charge] is mandatory: a violation not made the subject of a timely charge is 'the legal equivalent of a discriminatory act which occurred before the statute was passed' and is 'merely an unfortunate event in history which has no present legal consequences.' " Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005) (quoting United Air Lines v. Evans, 431 U.S. 553, 558 (1977)). The failure to file a timely charge with the EEOC bars the claim in federal court.[3] See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

The defendant first argues that two incidents, which allegedly occurred in 2010 or 2011, are barred from consideration because Robinson cannot show that they occurred within 300 days of her

---

[3] The statutory filing period is subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Robinson has presented no facts or argument warranting application of those exceptions in this case.



filing of the Charge of Discrimination with the EEOC.[4] (Def.'s Mem. Supp. Summ. J., ECF No. 23-1 at 8-9.) In her response in opposition to the defendant's motion for summary judgment, Robinson alleges that her hostile work environment claim is not time barred because the defendant's actions occurred after Robinson was officially notified of SCI's closing in September of 2012. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 27.) Thus, Robinson appears to concede that she is only complaining of actions taken by the defendant within 300 days of the Charge of Discrimination filed on May 1, 2013. The court agrees that incidents occurring in September of 2012 or thereafter are not time barred.[5]

---

[4] Although not specifically discussed in the Complaint or EEOC Charge, Robinson testified in her deposition that Regional Director Dennis Patterson, an African-American male, reversed a disciplinary decision made by Robinson in 2010 concerning a female African-American employee named Yolanda Geter. (Robinson Dep., ECF No. 23-12 at 12-13; see also Geter Grievance, ECF No. 23-10 at 2.) Robinson further testified that in 2010 or 2011, Patterson met with Robinson and two other employees who wished to discuss complaints about a supervisor. (Robinson Dep., ECF No. 23-12 at 14-15.) Robinson testified that Patterson lost interest in the employees' grievances upon learning that they were complaining about the actions of a male African-American supervisor, rather than any actions taken by Robinson. (Id. at 14.)

[5] Under the continuing violation theory, where "incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim . . . . [and] [i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." Morgan, 536 U.S. at 118. Because Robinson's response in opposition indicates her intent to base the hostile work environment claim on actions taken by the defendant after Robinson's notification of the prison's closing in September of 2012, the court need not decide whether incidents prior to that date would be time barred. However, the court notes that, even if it were to consider the two incidents in 2010 or 2011 discussed by Robinson in her deposition, the defendant would be entitled to summary judgment based on the analysis below.



b.    **Analysis**

Robinson's claim of a hostile work environment stems from her removal as Warden of SCI, transfer to the Training Academy, and alleged replacement as SCI's Warden by a Caucasian male.[6] Robinson alleges that her transfer resulted in the loss of the title of Warden, loss of management access and management/supervisory responsibilities, and loss of a state-provided car, cellular phone, gas card, and paging device.

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII); see also Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir 2015). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010) (Title VII).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that (1) she experienced unwelcome harassment; (2) the harassment was based

---

[6] In relation to her hostile work environment claim, Robinson's response in opposition to the defendant's motion for summary judgment further discusses Robinson's rejection by the defendant from three different positions for which she applied. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 25.) However, Robinson's "failure to select" allegations are the basis for her disparate treatment claim, which is addressed below.



on her race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.  Baqir, 434 F.3d at 745-46; see also Boyer-Liberto, 786 F.3d at 277; Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009).

To meet the second element, a plaintiff must show that "but for" one of these protected traits, she would not have been a victim of harassment.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA).  The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic.  See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80.

Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment.  Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746.  When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).



The defendant's motion for summary judgment asserts that Robinson cannot show that she was subjected to unwelcome conduct so severe and pervasive as to alter the conditions of her employment, and that she also fails to show that any conduct Robinson considered harassing was based on her race, sex, or any protected activity in which she may have engaged. (Def.'s Mem. Supp. Summ. J., ECF No. 23-1 at 8-12.) In support of its motion for summary judgment, the defendant provides deposition testimony from Robinson, who testified that she retained the pay and job title, if not the responsibilities, of Warden during the year she worked at the Training Academy. (Robinson Dep., ECF No. 23-12 at 10-11.) Robinson further admitted that, after her transfer to the Training Academy, SCI became "to some degree" a part of Walden Correctional Institution and that there is no longer a Warden position at SCI. (Id. at 6-7.) Robinson testified that her duties at the Training Academy did not require the use of a car, cellular phone, gas card, or pager, and that such benefits were returned to Robinson when she became Warden of Goodman.[7] (Id. at 7-9.) Robinson testified that she was not initially invited to the Wardens' monthly meetings after her transfer to the Training Academy and did not receive all emails pertaining to such meetings. (Id. at 10.) However, Robinson testified that she raised the issue with Ward and was advised that she could attend the Wardens' meetings. (Id.) Robinson averred that she also lost access to some management systems after her transfer, which have been restored since her appointment as Warden of Goodman. (Id.)

Robinson's response in opposition to the defendant's motion for summary judgment asserts that she could have remained at SCI, and that the defendant's reasons for removing Robinson from SCI were contrived. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 26-27.) Robinson continues to assert that she was replaced as Warden of SCI with a Caucasian male, that she was stripped of all

---

[7] Robinson stated that she was not reissued a pager. (Robinson Dep., ECF No. 23-12 at 9.) Instead, the defendant upgraded her phone. (Id.)



the benefits of being Warden, excluded from Wardens' meetings and managerial access, and was called a program manager, rather than Warden, at the Training Academy. (Id. at 26-27.) Robinson argues that the complete work environment and totality of the circumstances constitutes a hostile work environment. (Id. at 27.)

Robinson also provides an affidavit from Sharon Stukes, a Major at SCI who was supervised by Robinson prior to Robinson's transfer, who testifies that she currently works at the Stevenson-Walden facility in the Administration Building, which is in bad shape but has not been demolished. (Stukes Aff., ECF No. 36-20 at 3.) Robinson also provides her own affidavit testimony essentially reiterating her allegations (Robinson Aff., ECF No. 36-21), and deposition testimony from David Dunlap, whom Robinson claims replaced her as Warden of SCI. Dunlap testified that, as the Warden of Walden Correctional Institution, he became responsible for SCI when the two facilities were combined. (Dunlap Dep., ECF No. 37-12 at 3.) Dunlap also testified that two wards at SCI remained open after the facilities were merged, but all wards in the administration building and the Special Management Unit were closed at SCI. (Id. at 5.) Dunlap averred that one additional ward at SCI was initially closed, but later reopened. (Id.)

While Robinson subjectively perceived her removal from SCI, transfer to the Training Academy, and loss of various privileges as constituting a hostile work environment, she has failed to forecast evidence to show a workplace so "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Even when the totality of the circumstances asserted by Robinson are considered, she has presented no evidence of the allegedly rude, unprofessional, harassing, and abusive conduct by management asserted in the Complaint. As



argued by the defendant, Robinson fails to forecast any evidence that any of the incidents alleged were the result of her race or gender.  See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006).  Instead, the evidence in the record undisputably shows that the defendant decided to close portions of SCI, at least partially did so, and merged the remainder of SCI with another facility, of which Dunlap was already Warden, after Robinson's transfer to the Training Academy. Moreover, while Robinson appears to attempt to cobble together a hostile work environment claim based on separate discrete acts of disparate treatment such as alleged demotion or failure to promote, she offers no authority suggesting that she can do so in the absence of severe and pervasive abusive conduct based on a protected trait.  See Harris, 510 U.S. at 21 (stating that a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment"); Cobbins v. Sch. Bd. of City of Lynchburg, No. 90-1754, 1991 WL 1828, at *3 (4th Cir. Jan 23, 1991) (finding that, "absent evidence that [separate discrete acts of disparate treatment] created, perpetrated or promoted a hostile and abusive environment, they do nothing to buttress a Title VII claim"); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (explaining that hostile work environment claims are different in kind from discrete acts and because their very nature involves repeated conduct, hostile work environment claims cannot be said to have occurred on any particular day).  Therefore, the court finds that Robinson has failed to establish a *prima facie* case of a hostile work environment based on the record in this case.  Accordingly, the court concludes that no reasonable jury could find that the defendant subjected Robinson to a hostile work environment and the defendant's motion for summary judgment should be granted as to that claim.

### 2.    Disparate Treatment

Robinson raises a claim of disparate treatment based on her race and gender stemming from the defendant's failure to select Robinson for three positions for which she applied.[8] (Compl., ECF No. 1-1 at 15.)

The elements of a *prima facie* case of discriminatory disparate treatment are: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance;  and (4) different treatment from similarly situated employees outside of the protected class. See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  With regard to a claim based on an alleged failure to promote, the *prima facie* case generally requires the plaintiff to show:  (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination.  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

---

[8] Robinson's response in opposition to the defendant's motion for summary judgment asserts that her discrimination claim also includes the defendant's removal of Robinson from her position as Warden of SCI, replacement as SCI's Warden by a Caucasian male, and failure to upgrade Robinson's position.  (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 33.)  However, such allegations appear to be the basis of Robinson's retaliation and/or hostile work environment claims.  Further, Robinson's deposition testimony clarified that her disparate treatment claim is based solely on the defendant's failure to select Robinson for three positions for which she applied.  (Robinson Dep., ECF No. 23-12 at 18.)  "[A] party is generally not permitted to raise a new claim in response to a motion for summary judgment."  White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).  Thus, to the extent Robinson is attempting to expand her disparate treatment claim in response to the defendant's motion, such allegations are not properly before the court and are not considered.



The defendant argues that Robinson fails to "establish a *prima facie* claim of race or gender discrimination because she produced no evidence that she was rejected for the positions under circumstances giving rise to an inference of unlawful discrimination." (Def.'s Mem. Supp. Summ. J., ECF No. 23-1 at 21.) With regard to the first position for which Robinson applied but was not selected—Warden II at Broad River Correctional Institution—the defendant provides excerpts of Robinson's deposition in support of its motion for summary judgment. Robinson testified that six applicants, including Robinson, were interviewed for the Warden II position on December 19, 2012 by Dennis Patterson and A. J. Padula. (Robinson Dep., ECF No. 23-12 at 19-20.) Robinson testified that Patterson and Padula separately scored each of the six interviewees, and that Robert Stevenson, a male who formerly held the Broad River Warden II position prior to his retirement in November of 2012, was rehired for the position as a "retiree rehire" for no more than 75% of his base pay. (Id.) The defendant points to Robinson's testimony that she has no evidence, other than her own opinion, to support Robinson's contention that she was better qualified than Mr. Stevenson for the position, which he had already held for six years. (Id. at 21.) In her response in opposition to the defendant's motion for summary judgment, Robinson asserts that the defendant's "own packets" somehow create a genuine issue of material fact in this case, and that the interviews for the Warden II position "appear to be a sham[]" based on Stevenson's retirement in November of 2012 and re-application for the position in December of that year. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 36.) Robinson further asserts that she was the only female who applied for the position and claims that a question posed to the interviewees, regarding retention of employees, targeted Robinson. (Id.)

The second position for which Robinson applied was the Division Director of Inmate Services. In support of its motion for summary judgment, the defendant again cites to Robinson's deposition, where she testified that twenty-one applicants were screened out during the application



process and seven candidates, five females including Robinson and two males, were interviewed. (Robinson Dep., ECF No. 23-12 at 23-24.) Robinson testified that the applicant chosen for the position was Gwen Bright, an African-American female. (Id. at 25.) Robinson averred that she has no evidence that Martha Roof or John Carmichael, two of the three members of the selection panel, bore any grudge against Robinson because of her race or gender. (Id. at 27.) Robinson opined during her testimony that Dennis Patterson, the third member of the selection panel, may not like Robinson and this may be because she is a strong, black female. (Id.) However, as argued by the defendant, Robinson testified that she has no evidence, other than her own opinion, that Patterson does not like Robinson due to her race or gender. (Id. at 28.) In her response, Robinson asserts that Bright was a retiree from the South Carolina Department of Probation, Parole, and Pardon Services, who holds a masters degree in Criminal Justice, but had no prior experience with the Department of Corrections. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 37.) Robinson alleges that she, in comparison, had eight years' experience as a Warden at the time of the interview and significant experience with Inmate Services, meeting all qualifications for the Division Director position. (Id.)

The third position for which Robinson applied but was not selected was the position of Assistant Deputy Director, Programs and Services. The defendant points to Robinson's deposition testimony, where she averred that twenty-six applicants were screened for the position and five applicants, including Robinson, were interviewed. (Robinson Dep., ECF No. 23-12 at 28.) Robinson testified that each of the panelists, Patterson, Roof, and Carmichael, rated Robinson fourth out of five candidates and selected Sandy Barrett, a Caucasian female, for the position. (Id. at 29-30.) Robinson testified that she believes Barrett and Carmichael "were very close" and that Barrett may have received information from Carmichael during the interview process. (Id. at 31.) However, as argued by the defendant, Robinson testified that she has no evidence, other than her own opinion,

that the panelists favored Barrett over Robinson based on her race or gender. (Id. at 31-32.) Robinson's response in opposition to the defendant's motion for summary judgment asserts that the defendant was aware of her having filed an EEOC charge of discrimination when the Assistant Deputy Director Position became available. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 37.) Robinson further asserts that Patterson again targeted Robinson with questions about which he had disagreed with her in previous applications. (Id.) Robinson argues that she was more qualified for the position than Barrett, who had been employed by the defendant for twenty-two years, but had no education in criminal justice and had been a Warden one year less than Robinson. (Id.)

Even if the court were to find that Stevenson, Bright, and Barrett are similarly situated to Robinson in all relevant respects, see Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII and ADEA) (defining "similarly situated");[9] see also Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"), the court concludes that Robinson cannot demonstrate a

---

[9] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998).



*prima facie* case of discrimination based on the defendant's failure to promote Robinson.[10] Robinson has failed to forecast evidence to suggest that the defendant's selection of other candidates for any of the three positions discussed above was based on Robinson's race or gender. Accordingly, the court concludes that no reasonable jury could find that the defendant "rejected [Robinson for any of the three positions for which she applied] under circumstances giving rise to an inference of unlawful discrimination." <u>Evans</u>, 80 F.3d at 960.

Moreover, Robinson's failure-to-promote claim is also deficient because she cannot show that the defendant's legitimate, nondiscriminatory reason for hiring other candidates was a pretext for discrimination. Although Robinson demonstrates that she was a highly qualified candidate for the three positions for which she applied, she fails to present evidence to show that Stevenson, Bright, and Barrett were not also highly qualified. <u>See Heiko v. Colombo Savings Bank, F.S.B.</u>, 434 F.3d 249, 261 (4th Cir. 2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer."); <u>see also DeJarnette v. Corning, Inc.</u>, 133 F.3d 293, 298-99 (4th Cir. 1998) (stating that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer" and that "this Court does not sit as a kind of super-personnel

---

[10] Moreover, to the extent Robinson alleges in the Complaint that other Caucasian individuals "were given the opportunity to take [the] same position at other facilities" after the announcement that SCI would be closing (<u>see</u> Compl., ECF No. 1-1 at 8), or asserts in her response in opposition to the defendant's motion for summary judgment that the defendant failed to upgrade Robinson's position from "7D to 8A" as they did for another Caucasian male (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 37; <u>see also</u> Robinson Aff., ECF No. 36-21 at 4), the court notes that Robinson provides insufficient evidence to demonstrate that any of these Caucasian individuals were sufficiently similarly situated to Robinson so as to constitute valid comparators. <u>See Haywood</u>, 387 F. App'x at 359 ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator."). Thus, even if included in the analysis, such incidents would not entitle Robinson to relief.



department weighing the prudence of employment decisions made by firms charged with employment discrimination") (internal quotation marks and citation omitted).

Therefore, the defendant's motion for summary judgment should be granted as to Robinson's race and gender discrimination claim.

### 3.    Retaliation

Robinson's EEOC Charge asserts that, during her employment, she regularly complained about the work environment, the defendant's failure to properly handle situations, and the defendant's failure to promote black females to higher management positions. (Charge, ECF No. 23-5 at 2.) Robinson's Complaint alleges that she participated in protected activity by reporting discrimination and retaliation and that the defendant "disciplined [Robinson] recently in retaliation for her com[]plaints with the EEOC and the receipt of her right to sue, transferred [Robinson], failed and refused to not transfer [Robinson] in retaliation for her complaints regarding the treatment that she suffered because of her race and her complaints regarding race and sex discrimination and retaliation." (Compl., ECF No. 1-1 at 13-14.) The Complaint discusses a meeting between Robinson, Ward, and Patterson on August 16, 2012, where Robinson allegedly addressed concerns regarding the treatment of African-American females in upper management. (Id. at 7.) Robinson received an email from Patterson on August 30, 2012 informing Robinson that SCI would be closing, and a letter from Ward notifying her of the same on September 17, 2012. (Id. at 7-8.)

Claims of retaliation are also generally analyzed under the McDonnell Douglas burden-shifting framework. Smith v. First Union Nat'l Bank 202 F.3d 234, 248 (4th Cir. 2000). Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute. See 42 U.S.C. § 2000e-3(a). The requisite elements for a *prima facie* case of retaliation typically include: (1) the employee engaged in a protected activity; (2) the employer acted



adversely against him or her; and (3) there was a causal connection between the protected activity and the asserted adverse action.  Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).  Moreover, "[r]etaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment." Fordyce v. Prince George's Cnty., 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citing Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001), overruled on other grounds by White, 548 U.S. at 67-68)). However, a plaintiff "must show a *prima facie* case for retaliation, including evidence that [his] employer's adverse actions amount to a hostile work environment." Id.

Assuming that Robinson could satisfy the first three elements of a retaliation claim, as argued by the defendant, she cannot show that any adverse action was causally connected to her participation in protected activity.   To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action " '*because* the plaintiff engaged in a protected activity.' "  Holland, 487 F.3d at 218 (emphasis in original) (quoting Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 657 (4th Cir. 1998)).  Further, a plaintiff must show that but for the protected activity, she would not have experienced the alleged adverse act. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533-34 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation," which means "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

To demonstrate causation, a plaintiff must show that the employer was aware of the protected activity.  See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)).  In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection.  See



<u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient).

While Robinson's allegation of recent retaliatory discipline is unclear from the Complaint, Robinson's deposition testimony asserted retaliation by her supervisor, Jannita Gaston, also an African-American female, after Robinson's appointment as Warden of Goodman Correctional Institution. (Robinson Dep., ECF No. 23-12 at 35.)  Robinson testified that Gaston's 2014 review of Robinson, which rated her as "meets performance requirements," was retaliatory. (<u>Id.</u> at 44; <u>see also</u> 2014 Evaluation, ECF No. 37-7 at 1-8.)  In its motion for summary judgment, the defendant highlights excerpts from Robinson's deposition where she testified that she once called Gaston a liar and admitted that Gaston's actions were based, at least in part, on their past disagreements as colleagues. (Robinson Dep., ECF No. 23-12 at 36-37, 39, 45.)  Robinson further testified that, other than her opinion, she has no evidence to support her assertion of retaliation by Gaston. (<u>Id.</u> at 39.)  The defendant also provides excerpts from the deposition of Gaston, who testified that, at the time she conducted the 2014 performance evaluation, Gaston was unaware of Robinson's charge of discrimination or her lawsuit filed against the defendant. (Gaston Dep., ECF No. 23-14 at 4.)  In her response in opposition to the defendant's motion, Robinson states that she is currently supervised by Gaston and received a "meets" performance review by Gaston in 2014.  (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 37.)  However, Robinson's response does not refute the defendant's arguments relating to Gaston's actions.

With regard to Robinson's removal from SCI, the defendant argues that such action was due to the decision to close SCI.  ((Def.'s Mem. Supp. Summ. J., ECF No. 23-1 at 16.)  The defendant



further asserts that Robinson's transfer to the Training Academy was made in an effort to save her employment until another Level 1-B Warden position became available. (Id.) The defendant provides deposition testimony from Robert Ward, Deputy Director of the defendant's Division of Operations, in support of this contention. (Ward Dep., ECF No. 23-13 at 5-6.) The defendant further points to excerpts of Robinson's deposition, where she admitted: (1) that SCI has, at least to some degree, partially closed and merged with Walden Correctional Institution; (2) that SCI no longer has a Warden position; and (3) that, during Robinson's temporary transfer to the Training Academy, she did not require the tools typically afforded to a Warden. (Robinson Dep., ECF No. 23-12 at 5-8.) The defendant also highlights Robinson's testimony that the defendant's alleged retaliation resulted from Robinson's business-like, policy-oriented demeanor and by-the-book management style. (Id. at 42-43.)

Based on the record in this case, the court finds that Robinson cannot meet the *prima facie* test for retaliation because she has failed to forecast evidence to demonstrate a causal connection between any protected activity and the defendant's alleged retaliatory actions.[11] By her own testimony, Robinson admitted that Gaston's actions could result from prior disagreements between the two and she fails to present any evidence disputing Gaston's testimony that she was unaware of any protected activity by Robinson when Gaston conducted Robinson's review. Further, Robinson admitted that her removal from SCI, transfer to the Training Academy, and loss of various privileges

---

[11] Robinson's response in opposition to the defendant's motion for summary judgment also asserts that the defendant's failure to select Robinson for the three positions discussed in the previous section also constitutes retaliation. (Pl.'s Resp. Opp'n Summ. J., ECF No. 36 at 30-31.) However, as already discussed, Robinson fails to forecast evidence to suggest any discriminatory intent regarding her non-selection for the positions. Further, Robinson presented no evidence to show that "but for" any protected activity she would have been chosen for any of the the positions for which she applied. Thus, to the extent the defendant's actions in failing to select Robinson are construed as part of her retaliation claim, the defendant is likewise entitled to summary judgment.



enjoyed as a Warden could result from Robinson's management style. As discussed previously, Robinson has also failed to forecast evidence to show that the defendant's actions constituted the creation of a hostile work environment. Fordyce v. Prince George's Cnty., 43 F. Supp. 3d 537, 552 (D. Md. 2014). As Robinson cannot show that she would not have been removed from SCI, transferred to the Training Academy, or stripped of the tools traditionally provided to a Warden "but for" her alleged complaints of discriminatory treatment, see Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007), and because Robinson has presented insufficient evidence to show that the defendant's proffered reasons for its actions were false or were otherwise a pretext for retaliation, see Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010), the court concludes that no reasonable jury could find the defendant liable for retaliation. Therefore, the defendant's motion for summary judgment should be granted as to this claim.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted (ECF No. 23).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 28, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).